## (April 21, 1964)

■ In the Matter of the Arbitration between WILLOW FABRICS, INC., Respondent, and CAROLINA FREIGHT CARRIERS CORP., Appellant.

*Per Curiam.* We find the arbitration award unassailable. Nor do we think there should be a remand to the arbitrators for specific findings. Appellant's attack upon the award proceeds on the assumption that any award less than the amount it claimed to be due would be illegal as in contravention of Federal law prohibiting the payment of anything less than the published rates for transportation. Apart from the fact that such an argument presupposes the futility of any real arbitration — where the outcome is a certainty — the major premise of the assumption is fallacious in disregarding the extent of the submission to the arbitrators. That submission contemplated the possibility of a decision that there was an agreement to consolidate petitioner's shipments into truckload lots without being commingled with shipments of other converters. If that agreement was breached by appellant by commingling without petitioner's consent, then petitioner would not have to pay the full tariff rates sought. The arbitrator's award can be justified on that basis without there being a compulsory conclusion that there was an illegal ground for the award. The validity of the award is unaffected by the absence of a recital of the reasons for the award. (*Steelworkers* v. *Enterprise Corp.*, 363 U. S. 593, 598; *Bernhardt* v. *Polygraphic Co.*, 350 U. S. 198, 203; *Matter of Shirley Silk Co.* v. *American Silk Mills*, 257 App. Div. 375, 377; *Matter of John Post Constr. Corp.* [*Good Humor Corp.*], 9 Misc 2d 392, 393, affd. 6 A D 2d 684.) The award was properly confirmed.

The order should be affirmed.

STEUER, J. (dissenting). The arbitration which is the basis for the order under review arose out of a consent judgment obtained by the Interstate Commerce Commission against the respondent (herein the carrier). It appears that the carrier, which operates a trucking service, formulated a plan by which shippers were enabled to pay lesser amounts for transporting goods than called for by the tariffs promulgated by the I. C. C. The nature of the plan was for shippers to consign shipments to a corporation organized by the carrier. These shipments by several shippers were combined at the receiving

station into truckload lots. The charge made by the shipper was at the rate prescribed for truckload lots, regardless of the fact that individual shippers consigned less than truckload lots. By the device that the designated corporation appeared in the shipping documents as the consignee of each entire truckload lot, the carrier sought to justify what was an apparent device to rebate shipping charges. This was established in the I. C. C.'s suit against the carrier. The judgment provided that the carrier should compel payment of the promulgated charges from its shippers. Pursuant to this judgment the carrier instituted suit against petitioner, one of its shippers. In the course of the suit the parties agreed to submit the matter to arbitration. The shipper calculated the amount of its undercharges as $4,953.20. The arbitrator found for the shipper in the sum of $700.

It must be apparent that the arbitration involved here differs from the ordinary submission in certain vital particulars. A carrier and a shipper cannot agree on rates which are lower than the published tariffs (*Pennsylvania R. R. Co.* v. *Titus*, 216, N. Y. 17; *Keogh* v. *Chicago & North Western Ry. Co.*, 260 U. S. 156). In case of a dispute they cannot make a settlement which would in fact constitute a rebate. Even the carrier's misrepresentation by which it would procure contracts of transport would not defeat its right to recover the published charges (*Baldwin* v. *Milling Co.*, 307 U. S. 478; *American Motorists Ins. Co.* v. *New York Seven-Up Bottling Co.*, 18 A D 2d 36). Consequently, the device of arbitration, no matter what the form or terms of submission, cannot bring about this result. Ordinarily, the competence of the arbitrator is fixed by the terms of submission. But here the arbitrator cannot do what no court can do, namely, decide on the equities or on what in other situations, might be legal defenses.

It may be argued that despite the validity of the rules set out the award should still be confirmed. This is on the theory that the law does not prohibit a payment at a rate less than the tariff, it merely makes the proper charge collectible despite that payment. On a parity of reasoning, collection of the award would not preclude suit for the remaining balance. While possibly sound in logic, the argument should not prevail. Litigation should not be unduly protracted and where reasonable procedure allows it should be confined within the lines adopted by the parties. Furthermore, an award which countenances an illegal result should not be confirmed (*Matter of Western Union Tel. Co.* [*Amer. Communications Assn.*], 299 N. Y. 177). If arbitration becomes a device for allowing rebates this is the result.

The difficulty in this case is that there is no way of knowing what the arbitrator decided. The award does not appear to accord with any discernible calculation of goods shipped and rates. That does not preclude the possibility that it may so accord. The proper procedure would be to remit the matter to the arbitrator to make findings. Thereafter, if these accord with the law the award should be confirmed; if not, it should be vacated.

I recommend a remand accordingly.

Valente, J. P., McNally, Stevens and Witmer, JJ., concur in *Per Curiam*; Steuer, J., dissents in opinion.

Order, entered on May 8, 1963, affirmed, with $20 costs and disbursements to petitioner-respondent.