OPINION OF THE COURT
Andrew V. Siracuse, J.
This proceeding was conducted pursuant to the resettled order of the Honorable Frank Composto, dated March 28, 1980, which provided for a stay of all arbitration proceedings pending a trial with respect to the preliminary issue of whether “the offending vehicle was uninsured” at the time of a motor vehicle accident on December 10,1977. The accident involved a motor vehicle owned by Betty Jones, operated by Theodore Jones, and insured by the petitioner, Arnica Mutual Insurance (hereinafter Arnica). The other vehicle involved was owned by Wilfredo Ortero, operated by Jose R. Mora, and allegedly insured by the respondent, the Hartford Insurance Companies (hereinafter Hart *428 ford). Hartford alleged that the policy of automobile liability insurance for the Ortero motor vehicle was terminated on October 27, 1977.
Arnica challenges the validty of the cancellation of the Hartford policy on two grounds: first, Hartford did not present proof of proper mailing, and second, Hartford did not use the proper type size on its notice of cancellation.
With respect to the first issue, Hartford presented adequate proof of proper mailing. Mr. Pucci, an underwriter for Hartford, established the general practices and procedures of Hartford for generating a cancellation notice. He also identified a copy of the notice that was mailed to Mr. Ortero. Angela Pataysingh and Domonic Schiavone established the specific office procedures for mailing a cancellation notice. They also identified a proof of mailing receipt from the post office which indicated th'at the notice had been mailed and propertly posted. The court finds this evidence to be meticulous, competent, and overwhelming. The court also notes that Arnica did not present any evidence to rebut proof of mailing. The court therefore finds that Hartford proved proper mailing of the cancellation notice. (See Nassau Ins. Co. v Lion Ins. Co., 89 Misc 2d 982.)
The second issue before the court is whether Hartford used the proper type size in its notice of cancellation. Section 313 (subd 1, par [a]) of the Vehicle and Traffic Law provides, in part: “Every such notice of termination for any such cause whatsoever sent to the insured shall include in type of which the face shall not be smaller than twelve point a statement that proof of financial security is required”. The issue, therefore, is whether notice sent by Hartford contained the requisite information in “type of which the face shall not be smaller than twelve point”.
A copy of the notice that had been mailed to Wilfredo Ortero was introduced into evidence. Both the petitioner and the respondent presented expert testimony about the size of the type. Mr. O’Neil, the expert for Hartford, was eminently qualified to testify about type size. He presented a careful and detailed explanation about the proper method to determine type size.
He said that an expert first makes an approximate deter *429 mination of type size. Then, the expert ascertains the type face, that is, the style of the face. This determination is predicated upon technical information contained in type books and the expert’s experience as a type expert. After making the type face decision, the expert selects sample letters and compares them to type contained in a type book. This comparison provides the expert with a measurement of the type size of the type.
In the instant case, Mr. O’Neil initially determined the type size to be approximately 12 point. Using his own experience and referring to respondents’ exhibit, Mr. O’Neil decided that the type face of the notice was technically described as “typewriter”. He then measured the type against the exhibit and concluded that the size of the type was 12 point. The court accepts Mr. O’Neil’s testimony and finds that the type measured 12 points in size using a printer’s definition of type size.
The petitioner did not seriously contest Mr. O’Neil’s testimony. The petitioner argued that Mr. O’Neil used the wrong technique, under the statute, to measure the type face. Under the petitioner’s view of the statute, the proper method of measuring type face size is to measure each letter in the notice and determine whether that letter measures 12 points (12/72 of an inch). Using this method of measuring the type, both Mr. O’Neil for the respondent and Mr. McCall for the petitioner agree that the type face of the notice would measure 10 points or less. The court, however, rejects this measurement technique.
The court is aware that several cases from the Appellate Division, Second Department, lend some support to the petitioner’s position. (See Travelers Ind. Co. v Kammer, 72 AD2d 817; Cohn v Royal Globe Ins. Co., 67 AD2d 993, affd 49 NY2d 942.) In Travelers Ind. Co., the court held that strict compliance with the statute is necessary and that the type face is to be measured in accordance with the Cohn case. The court in Cohn said that, under the statute, the proper manner of measuring the type is to measure the face of the type and not the shank. The court also stated, however, that its construction of the statute “may require insurers, as a practical matter, to print the notice man *430 dated by subdivision 1 of section 313 of the Vehicle and Traffic Law in upper case or capital letters measuring at least 12 points in order to meet the Type face’ requirement” (Cohn v Royal Globe Ins. Co., supra, p 995). Since the notice in this case was printed in upper case letters and in 12-point type, the court finds that the respondent has complied with the statute as interpreted by Cohn and Travelers Ind. Co.
This court also believes that its. decision is correct for another reason. The court believes that the Appellate Division, Second Department, as a result of insufficient expert testimony and technical information in the records of Cohn and Travelers Ind. Co. misconstrued the statute as it relates to the measurement of type face size. According to A Typographic Quest Number Three, published by West Virginia Pulp and Paper and identified by Mr. O’Neil as an authoritative publication, “[w]hen reference is made to the size of a type face in points (a point being 1/72 of an inch), the measurement refers to the full dimension of the metal type from the top of the ascending letters (b, d, f, h, k, 1) to the bottom of the descending letters (g, j, p, q, y)Using this definition of the size of type face, 12-point type has a type face that measures exactly 12/72 of an inch (12 points) in height. Since the notice in this case was printed in 12-point type, the size of the type face is 12 points and the notice complies with the statute.
The court also notes that its decision complied with the intent of the legislation — to provide a type size which is easy to read. “A 12-point type * * * approaches the ideal size for average adult reading — with extreme ease.” (A Typographic Quest Number Three, West Virginia Pulp & Paper Co., 1965, p 5.)
The petition of Arnica is therefore denied.
Any motions on which decision was reserved which were not specifically granted herein are denied.